United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DESOTO CAB COMPANY,<br>Plaintiff,<br>v.<br>TEXAS INSURANCE COMPANY, et al.,<br>Defendants. | Case No. 26-cv-02879-LB<br>**ORDER GRANTING MOTION TO STRIKE AMENDED ANSWER**<br>Re: ECF No. 54 |

## INTRODUCTION

In this insurance bad-faith case, plaintiff Desoto Cab Company sued its liability insurers, Onyx Insurance Company, Inc., a risk retention group, and Onyx's successor, Texas Insurance Company (TIC), for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraudulent concealment.[1] The claims arise from a $1 million business-auto policy that Onyx issued in 2013 and that TIC assumed in 2021, a roughly $10.9 million judgment against Desoto in a

[1] First Am. Compl. (FAC) – ECF No. 25 at 10–24 (¶¶ 43–67). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

personal-injury suit brought by nonparty Carissa Copeland, and the insurers' handling of that claim, including their refusal to pay the unpaid balance of the judgment.[2]

Desoto moves to strike TIC's amended answer under California Insurance Code § 1616, which requires a nonadmitted foreign insurer, before it files any pleading in an action against it, either to procure a California certificate of authority or to post a bond sufficient to secure any final judgment. TIC did neither before it answered. Desoto asks the court to strike the amended answer, bar TIC from pleading until it complies, and set a process to fix the amount of the bond.[3] The defendants respond that § 1616 does not apply because Onyx, a risk retention group, issued the policy, and the federal Liability Risk Retention Act (LRRA), 15 U.S.C. § 3901 et seq., exempts risk-retention-group policies from state laws like § 1616. Alternatively, they contend that TIC is excused by the exceptions in Cal. Ins. Code § 1620 because the policy was effected under § 1760, TIC is an eligible surplus-lines insurer, and TIC has ample capital and surplus. They also argue that no bond is needed because they have settled the *Copeland* action and the judgment against Desoto "soon" will be satisfied.[4]

The court grants the motion. Section 1616 turns on "the insurer against whom the suit is filed." *Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 857 (9th Cir. 2005), *amended*, 433 F.3d 1089 (9th Cir. 2006). TIC is a nonadmitted foreign insurer, Desoto sued it, and it answered without a certificate of authority or a bond. The LRRA exempts risk retention groups, not the stock insurers that later assume their policies, and TIC is not a risk retention group. Nor has TIC carried its burden to show that a § 1620 exception applies: the policy was not "effected in accordance with" § 1760 because Onyx, as a risk retention group, is by definition not a "nonadmitted insurer" under that statute, and the discretionary exceptions in § 1620(b) are

---

[2] Am. Order – ECF No. 61 at 1–5 (summarizing the allegations); FAC – ECF No. 25 at 6 (¶ 22). The court amended its August 12, 2026 order on October 2, 2026, solely to correct the paragraph numbers listed in the conclusion. Am. Order – ECF No. 61; *see* Order – ECF No. 46.

[3] Mot. – ECF No. 54 at 5, 7, 14–15; Reply – ECF No. 63 at 3–4, 10. The motion alternatively asked the court to set the bond at $20 million without further briefing. Mot. – ECF No. 54 at 14–15. The reply does not pursue that request and asks for a briefing schedule on the amount, which it calls Desoto's "primary request." Reply – ECF No. 63 at 3–4.

[4] Opp'n – ECF No. 59 at 5–17.

United States District Court
Northern District of California

available only in actions that § 1620(a) already exempts from § 1616. The *Copeland* settlement may bear on the amount of the bond, but it does not eliminate the requirement.

The court strikes the amended answer as to TIC, orders the parties to confer about the amount of the bond, and sets a schedule to fix it. The amended answer will be reinstated automatically when TIC posts the bond or files proof of a California certificate of authority.

## STATEMENT

### 1. Factual Background

Onyx Insurance Company, Inc., a Risk Retention Group, is a Tennessee corporation formed in 2013 under the LRRA to provide liability insurance to livery businesses that are also its member-owners.[5] On July 29, 2013, Onyx issued a one-year, $1 million business-auto liability policy (No. OIC-CA-0000001) to Desoto, a California corporation that operates taxicabs in San Francisco and was then an Onyx shareholder.[6] The declarations page carried the LRRA-required notice that the policy was issued by a risk retention group that "may not be subject to all of the insurance laws or regulations of your State."[7]

In March 2014, during the policy period, a Desoto cab collided with Ms. Copeland. She sued Desoto and its driver in San Francisco Superior Court in 2016 (*Copeland v. Desoto Cab Co.*, No. CGC-16-550659), and Onyx defended.[8]

Effective May 19, 2021, while *Copeland* was pending, TIC entered into an Assumption and Indemnity Agreement with Onyx. TIC "assumed all of Onyx's policies and related liabilities by

---

[5] Updated Joint Case-Mgmt. Statement – ECF No. 64 at 4; Corp. Disclosure Statement (Onyx) – ECF No. 3 at 2.

[6] Opp'n – ECF No. 59 at 5–6; Silver Decl. – ECF No. 59-1 at 2 (¶¶ 3–4); Subscription Agreement, Ex. A to Silver Decl. – ECF No. 59-2 at 2–9; Policy, Ex. B to Silver Decl. – ECF No. 59-2 at 11–12; Mot. – ECF No. 54 at 7; Joint Case-Mgmt. Statement – ECF No. 48 at 4.

[7] Policy, Ex. B to Silver Decl. – ECF No. 59-2 at 12; Opp'n – ECF No. 59 at 6; *see* 15 U.S.C. § 3902(a)(1)(I).

[8] FAC – ECF No. 25 at 1–2 (¶ 3), 3 (¶¶ 9–10); Opp'n – ECF No. 59 at 6; Silver Decl. – ECF No. 59-1 at 2 (¶ 6). Desoto says that TIC, not Onyx, retained and directed defense counsel and "ran the claim"; the defendants respond that Onyx retained the Hinshaw firm in January 2020, before TIC assumed the policy. Mot. – ECF No. 54 at 6–8; Opp'n – ECF No. 59 at 6, 11 n.1; Docket, Ex. D to Silver Decl. – ECF No. 59-2 at 36–52. The motion does not turn on the dispute. *See* Section 1.1, below.

United States District Court
Northern District of California

novation and became the successor insurer under Desoto's policies." The agreement makes TIC Onyx's "lawful successor . . . as if the Policies were originally issued by" TIC and leaves Onyx "fully discharged."[9] TIC is a Texas corporation with its principal place of business in Omaha, Nebraska. Its direct parent is North American Casualty Co., and its indirect parent is AU Holding Company, Inc.[10] TIC does not hold a California certificate of authority and has never claimed to.[11] It describes itself as an "eligible surplus lines insurer" in California; it is licensed in Texas to write auto liability coverage and reports more than $87 million in capital and surplus.[12]

The *Copeland* case was tried in September 2021, after the assumption. The jury returned a verdict of about $11 million, and the court entered a $10,855,221.24 judgment against Desoto on November 16, 2021, accruing interest at ten percent a year.[13] The insurers appealed, posted a $5 million appellate bond, and lost. They paid the $1 million policy limit and the $5 million bond, leaving an unpaid balance of about $7.8 million. In February 2024, TIC told Desoto in writing that it did not intend to pay the remaining balance of the judgment.[14] In December 2024, TIC sued Desoto's former defense counsel for malpractice in San Francisco Superior Court, alleging that TIC and Desoto "were liable to the underlying plaintiff . . . for the entirety of the $10,855,221.24 Judgment."[15]

---

[9] Updated Joint Case-Mgmt. Statement – ECF No. 64 at 5 (quoted language); Silver Decl. – ECF No. 59-1 at 2 (¶ 5); Assumption and Indemnity Agreement, Ex. C to Silver Decl. – ECF No. 59-2 at 28–34; *see also* Ex. 2 to ECF No. 20-4; Reply – ECF No. 63 at 2.

[10] Corp. Disclosure Statement (TIC) – ECF No. 5 at 2.

[11] Mot. – ECF No. 54 at 8; Oksenendler Decl. – ECF No. 54-1 at 2–3 (¶¶ 3–4, 9); *see* Opp'n – ECF No. 59 at 12–13 (arguing eligible-surplus-lines status, not admission).

[12] Opp'n – ECF No. 59 at 7, 13, 15–16; Silver Decl. – ECF No. 59-1 at 2–3 (¶¶ 7, 9–11); Exs. E & F to Silver Decl. – ECF No. 59-2 at 60–117.

[13] Updated Joint Case-Mgmt. Statement – ECF No. 64 at 5; FAC – ECF No. 25 at 6 (¶ 22); Judgment, Ex. 4 to Oksenendler Decl. – ECF No. 54-1 at 27–28.

[14] Updated Joint Case-Mgmt. Statement – ECF No. 64 at 3, 5; FAC – ECF No. 25 at 6 (¶ 26); Letter, Ex. 5 to Oksenendler Decl. – ECF No. 54-1 at 30; Mot. – ECF No. 54 at 8.

[15] Compl., Ex. 3 to Oksenendler Decl. – ECF No. 54-1 at 13–14 (¶ 7), 16 (¶ 19); Pl.'s Req. for Judicial Notice (RJN) – ECF No. 55 at 2; Updated Joint Case-Mgmt. Statement – ECF No. 64 at 6.

**2. Procedural History**

Desoto sued TIC and Onyx in San Francisco Superior Court on January 16, 2026; the defendants removed the case on April 2, 2026.[16] On August 12, 2026, the court denied the defendants' motion to dismiss the concealment claim and granted in part their special motion to strike under California's anti-SLAPP statute.[17] On August 24, Desoto's counsel wrote to TIC's counsel, quoted § 1616, and asked TIC either to provide its certificate-of-authority number or to post a bond. TIC's counsel responded that the LRRA preempted § 1616 and that the defendants would oppose any bond.[18] TIC answered the first amended complaint on August 26.[19]

On September 1, the parties attended a global mediation. The defendants settled Ms. Copeland's claims; they say the settlement will result in a satisfaction of the *Copeland* judgment, but as of September 29, 2026, the *Copeland* docket reflected only a partial satisfaction and a judgment-debtor examination of Desoto set for October 16. Desoto's claims against the defendants did not settle.[20] On September 16, the defendants filed an amended answer adding an affirmative defense of satisfaction and discharge of judgment, and Desoto filed this motion the same day.[21] TIC has not posted a bond or filed a certificate of authority.[22]

The court has diversity jurisdiction. 28 U.S.C. § 1332. All parties consented to magistrate-judge jurisdiction. 28 U.S.C. § 636(c)(1).[23] Desoto's unopposed request for judicial notice of four exhibits (TIC's malpractice complaint, the *Copeland* judgment, California Department of Insurance Bulletin 96-04, and the results of a search of the Department's public company-profile

---

[16] Notice of Removal – ECF No. 1; Updated Joint Case-Mgmt. Statement – ECF No. 64 at 2.

[17] Order – ECF No. 46; Am. Order – ECF No. 61.

[18] Oksenendler Decl. – ECF No. 54-1 at 2 (¶¶ 3–4); Letter, Ex. 1 to *id.* – ECF No. 54-1 at 5–6; Cohen Decl. – ECF No. 59-3 at 3–4 (¶¶ 2–4); Exs. G & H to *id.* – ECF No. 59-4 at 1–10.

[19] Answer – ECF No. 47.

[20] Cohen Decl. – ECF No. 59-3 at 3 (¶ 5); Opp'n – ECF No. 59 at 6–7, 16; Updated Joint Case-Mgmt. Statement – ECF No. 64 at 4, 10–11; Joint Suppl. Case-Mgmt. Statement – ECF No. 50 at 2; Docket, Ex. D to Silver Decl. – ECF No. 59-2 at 36, 41; Reply – ECF No. 63 at 3, 9–10.

[21] Am. Answer – ECF No. 53 at 19; Mot. – ECF No. 54.

[22] Oksenendler Decl. – ECF No. 54-1 at 2 (¶ 4); *see generally* Docket.

[23] Consents – ECF Nos. 11, 16.

database) is granted. Court records and material published on government websites are proper subjects of notice. Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). The court notices the documents for their existence, dates, parties, and contents, not for the truth of disputed factual assertions in them.[24]

**LEGAL STANDARD**

Section 1616 of the California Insurance Code provides that "[b]efore any nonadmitted foreign or alien insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, the insurer shall either (1) procure a certificate of authority to transact insurance in this state; or (2) give a bond in the action, suit or proceeding in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in the action, suit, or proceeding."[25] The statute is part of the Unauthorized Insurers Process Act, Cal. Ins. Code §§ 1610–1620, which the Legislature enacted to protect California residents who buy insurance from nonadmitted out-of-state insurers and to encourage those insurers to meet California's admission requirements. *Trihedron Int'l Assurance, Ltd. v. Superior Court*, 218 Cal. App. 3d 934, 942–44 (1990). An insurer is "admitted" when it has complied with the laws imposing conditions precedent to transacting insurance in California, and "nonadmitted" when it has not; admission is secured by procuring a certificate of authority from the Insurance Commissioner. Cal. Ins. Code §§ 24, 25, 700(a).

Section 1616 is mandatory. When it applies, the court has no discretion to waive the bond, and the proceeding to fix it "involve[s] no weighing of the merits." *Lorenz v. Com. Acceptance Ins. Co.*, 40 Cal. App. 4th 981, 995–96 (1995). The requirement is substantive for *Erie* purposes and applies in federal diversity actions. *Bank of San Pedro v. Forbes Westar, Inc.*, 53 F.3d 273, 275

[24] RJN – ECF No. 55 at 1–4; Exs. 3, 4, 6 & 7 to Oksenendler Decl. – ECF No. 54-1 at 11–28, 31–41. The RJN's conclusion refers only to Exhibits 6 and 7, but its body requests notice of Exhibits 3, 4, 6, and 7; the court treats the request as covering all four. The court can decide the motion without oral argument. Civil L.R. 7-1(b).

[25] Cal. Ins. Code § 1616 (as quoted in Mot. – ECF No. 54 at 9).

(9th Cir. 1995); *Flintkote Co. v. Aviva PLC*, 177 F. Supp. 3d 1165, 1181 (N.D. Cal. 2016). An answer is a pleading. Fed. R. Civ. P. 7(a)(2).

Section 1620 limits § 1616 in two ways relevant here. First, under § 1620(a), the article does not apply to an action against an unauthorized foreign or alien insurer "arising out of any contract of insurance effected in accordance with Section 1760, 1760.5, 1763, or 1763.1," or to a contract that "is governed by and complies with" the law of the state where it was entered. Second, in "any action, suit, or proceeding arising out of any such contract" (that is, a contract described in § 1620(a)), § 1620(b) gives the court discretion to require a bond, except where (as relevant here) the insurer shows that it maintains funds in a state of the United States sufficient to satisfy a judgment "and that it will pay the judgment without requiring suit to be brought thereon" in that state, or the insurer is "an eligible surplus line insurer in accordance with Section 1765.1" when it pleads and the facts do not create "a reasonable doubt as to the present ability of the insurer to satisfy any final judgment." Cal. Ins. Code § 1620(a), (b)(1)–(2).[26] The insurer seeking the benefit of an exception bears the burden of proving that it applies. *Flintkote*, 177 F. Supp. 3d at 1182.

## ANALYSIS

### 1. Section 1616 Applies to TIC

TIC meets every element of § 1616. It is a foreign insurer (a Texas corporation headquartered in Nebraska); it is nonadmitted (it has no California certificate of authority); Desoto instituted this action against it; and it filed an answer and an amended answer without posting a bond or procuring a certificate.[27] The defendants do not dispute any of these facts. They argue instead that Onyx's status controls, that the LRRA exempts the policy from § 1616, and that Desoto is outside the class the statute protects.[28] None of the arguments succeed.

---

[26] The parties quote § 1620. Mot. – ECF No. 54 at 13; Opp'n – ECF No. 59 at 14–15.

[27] Corp. Disclosure Statement (TIC) – ECF No. 5 at 2; Answer – ECF No. 47; Am. Answer – ECF No. 53; Oksenendler Decl. – ECF No. 54-1 at 2 (¶ 4).

[28] Opp'n – ECF No. 59 at 7–12.

United States District Court
Northern District of California

### 1.1 The Statute Turns on the Insurer That Is Sued

Section 1616 applies to "any nonadmitted foreign or alien insurer" that files a pleading in an action "instituted against it." It asks who the defendant insurer is and whether that insurer is admitted. It does not ask who issued the policy or what the issuer's regulatory status was. The Ninth Circuit read the statute the same way in *Hawthorne*, holding that § 1616 "turn[s] on the insurer against whom the suit is filed." 421 F.3d at 857. There, the nonadmitted insurer that had issued the policy merged into its admitted parent. The court held that the nonadmitted defendant still had to post a bond because the suit had been filed against it, and it declined to impute the affiliate's admitted status. *Id.* at 856–58.

The defendants try to distinguish *Hawthorne* because the nonadmitted insurer there both issued the policy and was sued, whereas here Onyx issued the policy and TIC was sued.[29] The distinction does not help them. *Hawthorne*'s "critical point" was that the suit was an action against a nonadmitted insurer, not that the defendant had issued the policy. 421 F.3d at 857. If anything, the case cuts against the defendants: it rejected an effort to borrow a related entity's more favorable regulatory status, which is what TIC seeks to do with Onyx's status here. And TIC's own agreement treats the policy "as if [it] were originally issued by" TIC.[30] The defendants call Desoto's reading a "retroactive" application of § 1616 but cite no authority for the label.[31] Nothing retroactive is involved. The statute regulates the filing of pleadings, and the pleadings at issue were filed in 2026 by a nonadmitted insurer that chose, in 2021, to assume a California insured's policy.

To the extent the Act reaches only actions arising out of the transaction of insurance in California, *see Trihedron*, 218 Cal. App. 3d at 944–45, that requirement is satisfied and, in any

---

[29] Opp'n – ECF No. 59 at 9–10.

[30] Assumption and Indemnity Agreement, Ex. C to Silver Decl. – ECF No. 59-2 at 28. The defendants say that Desoto quotes this language out of context and that a private agreement cannot alter the LRRA's application. Opp'n – ECF No. 59 at 12 n.3. The point is narrower: TIC chose to stand in Onyx's shoes as the insurer on a California policy, and § 1616 asks only whether the insurer that is sued is admitted.

[31] Opp'n – ECF No. 59 at 10; Reply – ECF No. 63 at 5–6.

United States District Court
Northern District of California

event, undisputed: the defendants call the point "of no consequence" rather than contesting it.[32] "Transact" includes the "[t]ransaction of matters subsequent to execution of the contract and arising out of it." Cal. Ins. Code § 35(d). After TIC assumed a California insured's policy in May 2021, the insurer declined a within-limits offer to settle a California lawsuit, took that case through trial and appeal in California courts, posted an appellate bond, refused in writing to pay the balance of the resulting judgment, and sued Desoto's California defense counsel in a California court.[33]

**1.2 The LRRA Does Not Exempt TIC**

The LRRA exempts "a risk retention group" from state laws that would regulate its operation or "otherwise, discriminate against a risk retention group or any of its members," 15 U.S.C. § 3902(a)(1), (4), and its exemptions "apply only to the provision of liability insurance by a risk retention group." *Id.* § 3905(b). A risk retention group is an entity owned only by its member-insureds (or by an organization of them) whose name includes the phrase "Risk Retention Group." *Id.* § 3901(a)(4)(E), (H).[34]

TIC is not a risk retention group, and the defendants do not contend otherwise. It is a stock corporation owned through two corporate parents, not by its insureds, and its name does not include the required phrase.[35] The defendants' position is that the exemption attaches to the policy because Onyx issued it, and it travels with the policy to whoever later assumes it.[36] The statute

---

[32] Opp'n – ECF No. 59 at 11.

[33] Joint Case-Mgmt. Statement – ECF No. 48 at 4–6; Updated Joint Case-Mgmt. Statement – ECF No. 64 at 3, 5–6; Letter, Ex. 5 to Oksenendler Decl. – ECF No. 54-1 at 30; Compl., Ex. 3 to *id.* – ECF No. 54-1 at 12–26. The parties dispute whether TIC or Onyx retained defense counsel in 2020 (*see supra* n.8), but the events listed in the text postdate the May 2021 assumption, and the defendants do not contend that TIC was not the insurer responsible for them.

[34] The parties cite these provisions. Mot. – ECF No. 54 at 13; Opp'n – ECF No. 59 at 8–10; Reply – ECF No. 63 at 2, 6. The court also relies on the savings clause in § 3902(a)(4), which neither side quotes; the clause provides that nothing in the section "shall be construed to affect the applicability of State laws generally applicable to persons or corporations."

[35] Corp. Disclosure Statement (TIC) – ECF No. 5 at 2; Reply – ECF No. 63 at 2, 6 (citing TIC's financial statements, Ex. F to Silver Decl. – ECF No. 59-2 at 86, 90).

[36] Opp'n – ECF No. 59 at 8–10, 12 ("regardless of whether the entity is purchased or dissolved later"; "regardless of TIC's status otherwise").

says the opposite. The exemption runs to "a risk retention group," reaches "only" the provision of liability insurance "by a risk retention group," and preserves state laws "generally applicable to persons or corporations." 15 U.S.C. §§ 3902(a)(4), 3905(b). Section 1616 is a law of general application to nonadmitted insurers, and applying it to a nonadmitted stock insurer does not regulate Onyx's operation or discriminate against Onyx or its members. (The only Onyx member in this case is Desoto, the party whom the defendants would deprive of the statute's protection.) The defendants cite no case holding that a non-risk-retention-group insurer inherits the LRRA's exemptions by assuming a risk retention group's book of business. *National Warranty Insurance Co. RRG v. Greenfield*, 214 F.3d 1073 (9th Cir. 2000), on which they rely, concerned state regulation of a risk retention group itself; it says nothing about a successor.[37] And as Desoto observes, the defendants' rule would let any insurer escape state regulation by writing policies through a risk retention group and then transferring them to an affiliated stock company.[38]

### 1.3 Desoto Is Within the Statute's Protection

The defendants' last argument is that Desoto is not in the class that § 1616 protects because it bought the policy from a risk retention group of which it was a member-owner, not from a nonadmitted insurer.[39] The statute contains no such limitation. It protects any plaintiff who sues a nonadmitted foreign or alien insurer by requiring that insurer to secure the judgment. *Trihedron*'s description of the Legislature's purpose — protecting California residents who purchased policies from nonadmitted out-of-state insurers — was offered in rejecting a constitutional challenge to the statute, not as an unwritten element of it. 218 Cal. App. 3d at 943–44. And the purpose fits this case. Desoto is a California insured whose policy is now held by a nonadmitted out-of-state insurer that has refused to pay a California judgment and that chose to step into the issuing insurer's shoes "as if" it had issued the policy. The defendants' reading would let a nonadmitted

[37] Opp'n – ECF No. 59 at 8–9 (citing *Nat'l Warranty*, 214 F.3d at 1081).

[38] Reply – ECF No. 63 at 7.

[39] Opp'n – ECF No. 59 at 9–10 (quoting *Hawthorne*, 421 F.3d at 858, and *Trihedron*, 218 Cal. App. 3d at 944).

insurer avoid § 1616 by acquiring policies from risk retention groups, exactly the circumvention the statute was enacted to prevent.[40]

Section 1616 applies to TIC. Because TIC pleaded without a certificate of authority or a bond, its pleading must be stricken unless an exception applies. *Lorenz*, 40 Cal. App. 4th at 995–96; *Flintkote*, 177 F. Supp. 3d at 1181.

**2. TIC Has Not Shown That an Exception Under Section 1620 Applies**

**2.1 Section 1620(a)**

The defendants invoke the first clause of § 1620(a): that the policy was "effected in accordance with Section 1760," which permits a "home state insured" to "negotiate and effect insurance . . . with any nonadmitted insurer." Cal. Ins. Code § 1760(a).[41] The argument fails. For purposes of the surplus-lines chapter, a "nonadmitted insurer" is an insurer not licensed or admitted in California "but does not include a risk retention group." *Id.* § 1760.1(n). Onyx issued the policy as a risk retention group — the defendants' entire LRRA argument depends on that fact — so the policy was not effected with a "nonadmitted insurer" under § 1760 and could not have been effected "in accordance with" that section.[42] TIC's own status as a nonadmitted insurer does not change the analysis: it did not issue the policy, as the defendants acknowledge, and it offers no evidence that the 2013 placement complied with § 1760 in any other respect.[43]

---

[40] Reply – ECF No. 63 at 4–5, 7 (making this point).

[41] Opp'n – ECF No. 59 at 14 & n.4 (citing Ex. 1 to FAC – ECF No. 25 at 27, and Mot. – ECF No. 54 at 14, for the proposition that Desoto purchased the policy directly from the carrier).

[42] Reply – ECF No. 63 at 2, 7–8 (making this point). Both sides rely on § 1760.1(n). Opp'n – ECF No. 59 at 8; Reply – ECF No. 63 at 2, 6–7.

[43] Opp'n – ECF No. 59 at 14 n.4 (TIC was not "the policy issuing entity"). The defendants do not invoke § 1620(a)'s second clause (a contract "governed by and compl[ying] with" the law of the state where it was entered), and they offer no evidence of where the policy was entered or what law governs it. The court does not reach the issue. *See Flintkote*, 177 F. Supp. 3d at 1182 (insurer must proffer affirmative evidence to establish an exception). *See* Mot. – ECF No. 54 at 14 (noting the absence of any finding that the policy is governed by and complies with California law).



United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.2 Section 1620(b)

The defendants' principal fallback is § 1620(b). They contend that TIC maintains more than $87 million in capital and surplus available to satisfy a judgment (§ 1620(b)(1)) and that it is an eligible surplus line insurer under § 1765.1 (§ 1620(b)(2)).[44] By its terms, § 1620(b) operates "in any action, suit, or proceeding arising out of any such contract" (the contracts described in § 1620(a)). In those actions, § 1616's mandatory bond does not apply, and § 1620(b) instead gives the court discretion to require a bond unless the insurer makes one of the enumerated showings. Where, as here, § 1620(a) does not apply, § 1616 governs, and the bond is mandatory. *See Flintkote*, 177 F. Supp. 3d at 1182 (declining to consider § 1620(b) after holding § 1616 applicable); *cf. Ludgate Ins. Co. v. Lockheed Martin Corp.*, 82 Cal. App. 4th 592, 611 (2000) (§ 1620(b) confers discretion to require a bond where § 1616's requirement does not apply).

The court therefore does not decide whether TIC qualifies as an eligible surplus line insurer or whether Desoto is right that § 1765.1's financial test looks to the time the insurance was placed rather than the time of pleading.[45] TIC has not carried its burden to show that any exception in § 1620 applies.

## 3. The Copeland Settlement Does Not Eliminate the Bond Requirement

The defendants argue that no bond is needed (and certainly not the $20 million bond that Desoto's motion proposed in the alternative) because they have settled the *Copeland* action and the judgment against Desoto "soon" will be satisfied.[46] The argument conflates the existence of the obligation with its amount. Section 1616 requires a bond "sufficient to secure the payment of

---

[44] Opp'n – ECF No. 59 at 14–16; Silver Decl. – ECF No. 59-1 at 2–3 (¶¶ 7, 9–11).

[45] Reply – ECF No. 63 at 3, 8. Even if § 1620(b)(1) were available, TIC has not made the showing it requires. That subdivision calls for a showing both that the insurer maintains sufficient funds and "that it will pay the judgment without requiring suit to be brought thereon" in the state where the funds are located. Mr. Silver attests that TIC "has the funds"; neither he nor anyone else commits that TIC will pay a judgment in this action without further suit (a notable omission from the officer who wrote in 2024 that TIC did not intend to pay the balance of the *Copeland* judgment). Silver Decl. – ECF No. 59-1 at 3 (¶ 11); Letter, Ex. 5 to Oksenendler Decl. – ECF No. 54-1 at 30; Reply – ECF No. 63 at 3, 9.

[46] Opp'n – ECF No. 59 at 5–7, 16–17; Cohen Decl. – ECF No. 59-3 at 3 (¶ 5).

any final judgment which may be rendered in the action" (this action), and the measure is Desoto's potential recovery here, not the *Copeland* judgment. Satisfaction of the *Copeland* judgment may reduce Desoto's economic damages, but Desoto also seeks consequential damages, punitive damages, and attorney's fees under *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), and its claims against the defendants did not settle.[47] Nor has satisfaction occurred: as of September 29, 2026, the *Copeland* docket showed only a partial satisfaction, and a judgment-debtor examination of Desoto remained set for October 16.[48] The parties may address the effect of the settlement on the amount of the bond in the submissions ordered below.

Desoto's reply does not pursue the $20 million figure and asks instead for a schedule to fix the amount.[49] The court sets a process to resolve the issue in the Conclusion.

#### 4. Remedy

The court strikes the answer and provides that it will be reinstated automatically when the bond is posted. *Lorenz*, 40 Cal. App. 4th at 986. First, the order strikes the amended answer only as to TIC. Desoto seeks no bond from Onyx, and to the extent the amended answer is also Onyx's pleading, it remains operative as to Onyx.[50] Second, § 1616 restricts the filing of "pleading[s]," Fed. R. Civ. P. 7(a) (not motions, discovery, or other participation), and nothing in this order prevents TIC from otherwise defending the case while the amount of the bond is fixed.[51] Third, because TIC is "otherwise defend[ing]" the action, Fed. R. Civ. P. 55(a), no default may be entered against it while the time the court sets for compliance remains open. Fourth, the court will

---

[47] FAC – ECF No. 25 at 25 (prayer); Mot. – ECF No. 54 at 15; Joint Suppl. Case-Mgmt. Statement – ECF No. 50 at 2; Updated Joint Case-Mgmt. Statement – ECF No. 64 at 4, 10–11. The defendants dispute that Desoto has any damages, *see* Updated Joint Case-Mgmt. Statement – ECF No. 64 at 7, but § 1616 does not permit the court to weigh the merits. *Lorenz*, 40 Cal. App. 4th at 995.

[48] Docket, Ex. D to Silver Decl. – ECF No. 59-2 at 36, 41; Reply – ECF No. 63 at 3, 9–10.

[49] Reply – ECF No. 63 at 3–4, 10.

[50] Reply – ECF No. 63 at 2, 6 ("The instant motion does not seek a bond from Onyx, only Texas Insurance.").

[51] The defendants make this point about the statute's scope. Opp'n – ECF No. 59 at 7. Desoto does not contend otherwise and does not challenge TIC's earlier motions.

fix the amount of the bond, and the deadline to post it, after the parties confer and make the submissions described below.

**CONCLUSION**

The motion is granted. The court orders as follows.

1. The amended answer (ECF No. 53) is stricken as to TIC. Until it complies with Cal. Ins. Code § 1616, TIC may not file any pleading in this action. TIC complies by either (a) posting a bond in the amount the court fixes or (b) procuring a California certificate of authority. In either case, TIC must file a notice on the docket attaching proof of compliance, and the amended answer will be reinstated as to TIC upon that filing, without further order. The amended answer remains operative as to Onyx.

2. By October 21, 2026, the parties must meet and confer about the amount of the bond. If they agree, they must file a stipulation and proposed order by October 22, 2026. If they do not agree, by October 26, they must file a joint letter brief of no more than five pages (exclusive of declarations and exhibits) setting out each side's position and proposed amount, with supporting declarations and documents, including the terms and current status of the *Copeland* settlement. The court will either address the amount on October 29, 2026, or it may decide the amount on the papers. The court will set the deadline to post the bond when it fixes the amount.

3. Nothing in this order limits TIC's participation in discovery or motion practice. No default may be entered against TIC while the time the court sets for compliance remains open.

This resolves ECF No. 54.

**IT IS SO ORDERED.**

Dated: October 19, 2026

LAUREL BEELER
United States Magistrate Judge